All right, if the appellant would come forward, the attorney gives the name and who they represent, we'll be glad to hear the case. May it please the court. Michael Cometa, appearing on behalf of Appellant Appellees Klein, Putnam, and Biondi. I will briefly highlight the overall theme of this case. This will take only about two minutes. Other than that, I'm simply here to answer any questions the court may have. So what is the overall theme of this case? It is this. The government cannot regulate speech purely by majoritarian whim. Instead, the government must establish real, concrete reasons for limiting speech. In this case, this panel previously stressed a need to show material or significant disruption actually caused by amplified speech. But the city didn't produce evidence of any disruption, much less a material or significant one. Well, they did, in fact, present an expert to file declarations that the court accepted. And with respect to the high school's city hall, there was declarations about the nature of the disruption. That expert never said anywhere in that single declaration that there was any material or significant disruption. Well, the principal did. I'm sorry? The principal did at the high school. Right, but that wasn't based on actual amplified speech actually occurring there. In other words, there's never been a history of any problems. Talked about proximity and the noise and distraction that would occur, didn't it? Well, that's the difference between rational basis evidence. But you said there was no evidence of disruption. I'm just challenging that. Yeah, there is no evidence of disruption because we asked for interrogatories of any disruption ever occurring anywhere, at the city hall or the school or downtown, and they came forward with nothing. There's absolutely no evidence in the record. Just a minute. Didn't the city present a sound expert who had a declaration who said that your client's proposed volume of speech would be disruptive? Proposed volume, yes. My clients were never there, and there's no evidence anywhere in the record that anyone has ever appeared at any of those three locations and caused an actual disruption. So are you saying that they actually had to have somebody stand out on the sidewalk and blast at the same level or talk into a bullhorn to find out whether that disrupted the students? That's what this court has said. A few months after this panel issued its memorandum, this court issued an en banc First Amendment decision in Norse v. City of Santa Cruz. That was the case where someone gave a Nazi salute and also whispered. I believe one of the members of this panel was on that. At page 976, it held that, quote, actual disruption means actual disruption. It does not mean constructive disruption, technical disruption. Well, counsel, you're taking language out of a different situation. That's not this case. Could I ask you to back up a minute and talk about the posture of this case? We've already gone through this case once and pointed out, at least on the preliminary injunction phase, what the likelihood of success, and we did rule in your favor in that regard. But as I understand it, the ordinance has now been changed. What's going on in Laguna Beach now is governed by an entirely different ordinance. So the purpose of our ruling today is to do what? To uphold the district court's ruling partially in your favor and not in your favor in some regards so that the determination of attorney fees can be made? Is that what we're talking about? No, Your Honor. A doctrine of res judicata would prevent a client from once again challenging those laws if the city came back and re-implemented it. That's why this case is so important. Wait a minute. They have a new ordinance, right? Correct. And you haven't challenged that? Well, it's a completely different ordinance. Yes. So whatever we say about the ordinance and what was litigated in the district court is talking about something that happened in the past? That's correct. So the issue of nominal damages and also so that the city cannot go back and just re-institute that previous ordinance that had a ban on amplification in front of City Hall and the schools. And you are making an applied challenge, correct? As applied, correct. And so let's go to the nominal damage.  Why didn't you go see the local government as I think the California Government Claims Act would suggest? I don't fully understand your question, Your Honor. Well, as I understand it, you want nominal fees and attorney's fees under the California Constitution. It seems to me you should comply with the California Government Claims Act in order to win under the California Constitution. So let's start there. Under the California Constitution. Of course, under the federal constitution, there's not that requirement. So you're giving up your claim for damages and attorney's fees under the California Constitution? No, not at all, Your Honor. I was just going to a segue saying that under the federal constitution, nominal damages are applicable. Well, I understand you're going under the federal, but I'm talking about the claims under the California Constitution. I see, Your Honor. But you did allege California constitutional claims. That is correct, Your Honor. And you're referring to the Minsky Rule. I am. The California Tort Claim Act does not apply where the plaintiffs sought primarily injunctive or declaratory relief and damages are incidental. And certainly nominal damages are incidental to the prospect of relief. That was my client's primarily. The best case is the Minsky exception? That is correct, Your Honor. That was a unanimous California Supreme Court case. But that was in a footnote, and it was dictum in that case, and the California appellate courts since then, particularly in the Fourth Appellate District, have not followed that rule. Isn't that correct? Yes, there is a split. Some courts have followed that, some haven't. But obviously federal courts must follow whatever the rule is under California law, and that dictum. You're saying that dictum is what we need to follow? No, I'm not saying you need to follow that, but that's the best representation of what a unanimous California Supreme Court said. Well, when was that said? 1974, Your Honor. And since then, the California appellate courts, who presumably are also bound to follow the California Supreme Court, several of the districts, including the second and the fourth, have said that that was dictum. It wasn't, and it was, they actually confined it to, or at least one of the cases confined it to Fair Housing Act, didn't it? There is a split of authority. Some have upheld Minsky, some have not. I would just note that the vast majority of the federal courts have followed Minsky. There's a list of seven different cases in my brief on page eight of my opening brief where the federal courts did follow Minsky. I'm not even sure that I have found any federal courts that did not apply Minsky. Yeah, we face these problems, not infrequently, particularly in California. Usually in those, well, not always, but sometimes we'll certify the question to the California Supreme Court. There's no, the federal district courts are the ones you're referring to, correct? Let's see. Yes, Your Honor. There's no panel for this court, and basically we sit in a position where it's often appropriate for us, before we rule on California law, which may have wide implications, to ask the California Supreme Court to answer the question. Is that something we should do here? If the court is so inclined, but I think on balance the vast majority of the case law is on the side of Minsky. Are you talking about federal cases or are you talking about state cases? Federal cases especially. Well, don't count the federal cases because the district courts normally don't certify questions to the California Supreme Court. Sure, but you are correct that the California districts are split. And the weight of those is for or against following Minsky? I believe it's on the side of Minsky. Okay. All right, well, we can check that out. Okay, I will save my remaining time for rebuttal. Thank you very much. Thank you. Good morning, Your Honors. Tholk Kahn for the City of Laguna Beach. I, too, appreciate the opportunity to appear before you again. When we were last convened, this court expressed concern in reviewing the district court's ruling on a motion for preliminary judgment about the absence of an adequate evidentiary record on which to judge the findings that were made by the district court in denying the motion. Upon vacating the order and remanding the case, the plaintiffs did not renew their motion for a summary judgment. Several of you have noted the city later revised its noise ordinance, effectively eliminating the hours limitations provision of the ordinance that had been challenged by the plaintiffs. Subsequently, the plaintiffs brought a motion for summary judgment. The city responded and brought a cross motion for summary judgment as well. Taking to heart the court's expressed concern with the nature of the evidence that had presented, had been presented on the issues in dispute, the city assembled and presented to the district court factual information as to the specifics of the time, place, and manner of the activities that were proposed by the plaintiffs. I guess before you get very far along with that, I'm still having trouble. Because it doesn't matter how many times the city amends, it seems like the ordinance, nonetheless, despite attempting to restrict the amplified speech at certain locations, many activities are exempted when the public entity authorizes it. In other words, I'm talking about the exemption. Yes, Your Honor. And when I read that language, it says, this includes, without limitation, sporting and recreational activities. Without limitation, occasional outdoor gatherings, public dances, shows or sporting and entertainment events, provided that such events are conducted with the approval, authorization, contract, lease, permit, or sublease by the entity. Now, it seems to me that what this does is this vast list of potential exemptions, really considered in conjunction with what Klein did here, that they swallow the rule. In other words, any time the city or any of its sub-entities feel like allowing amplified speech, whether the speaker is public or private, it can do so on its own whim. So I'm having a tough time understanding how, in effect, when we said, in the absence of guiding standards, municipalities may not permit some government speech, while barring other speech, how that's changed at all, given these exemptions. Your Honor, given that we're dealing with an as-applied challenge. We are. And the factual evidence that was presented to the district court and is before this court as to the historical manner in which those provisions have been administered and interpreted, it has not been confined to those speakers with whom the city may find favor with, either as to the identity of the speakers or the content of their message. But on a motion for summary judgment, wouldn't the city need to show that there's no disputed issue of fact, not just merely absence of evidence? Because if I look at the record, there's a multitude of events the city has allowed. They allowed Patriot's Day Parade. They allowed music in the park. They allowed Heritage Month. Now, in my book, one can't even say that all those are public activities. And so, again, it leads me to the same spot. With that big loophole at the end where the city just says, I'll do what I want when I want without giving any guidance as to how to do it, I'm having still trouble, given our former decision. Well, at the onset, the number of events we're talking about here are few. There was evidence presented through the declaration of, among other persons, the city's cultural arts administrator or manager, I think is their title, that detailed the types of events which had been allowed, which have to be city-sponsored or promoted. Well, but that's not true because the record in my book demonstrates, and I guess you can correct me if I'm wrong, that there was preferential treatment given to the Festival of Arts and the Pageant of the Masters, which is a private event. And so I'm, again, at the same boat. It seems to me that while you're saying, well, there are certain activities we've tried to prescribe and, therefore, content neutral or not is your argument, this big exemption at the end says, but the city can do whatever they want to do. I don't read, and I would suggest the city has not interpreted or applied the ordinance that broadly in practice. It's been limited to city-owned or controlled facilities. The Festival of Arts Pageant of the Masters, for example, occurs in a city park. To be sure, the organization, the Festival of Arts itself, is a public benefit, albeit private corporation. It is not an area to which the plaintiffs apply for permission to engage in activities, and there's no indication that the selection of events that qualify for that exception were done on a speaker or content-specific basis. Well, the contract, as it relates, for instance, for those going to the Irvine Bowl, every one of those contracts establish an 85-decimal limit as a condition of the contract. So, again, here's a private event, a blanket exception, and, again, we're doing about noise, which is different than what we have, and I'm having a tough time seeing why that exemption doesn't just get rid of the statute. My only response, Your Honor, is I don't know that that issue is front and center in this case, given the nature of the challenge. I have the same difficulties as Judge Smith does. When we had this case before, on the noise level, it was focused on downtown, but we found that the 5 p.m. restriction was content-based as applied, given Laguna Beach's permitted use of amplified sound after 5 p.m. for city-sponsored events. In the absence of guidance standards, municipalities may not permit some government-sponsored speech designated as beneficial to the general welfare while barring other speech. Now, we've said that there are limited exceptions. However, the city submitted no evidence of such a content-neutral policy to the district court. So where's the evidence on remand that we said was lacking when we heard the case before? Excuse me, Your Honor. What I'm doing is searching for the declaration of Sean Portial, who is the cultural arts manager, who I believe in her declaration did set forth. And, of course, that's one of those I did not bring with me. I apologize. But I believe in the declaration of Sean Portial, which is in the record at approximately pages 57A through D. She did set forth the standards by which her determinations are made as to the events that qualify as city-sponsored and city-produced events, and that those standards are objective in nature and not contract-based. Well, since you don't have it, it's a little hard to examine you on it. But I've looked at that, and I'd like to ask you where the evidence is in that. Where are the standards? I'm reading it, and she talks about music in the park and sunset serenades. Isn't that the one you're talking about? Right. I thought there was reference to it. It's limited to musical and cultural arts. That's content-based, isn't it? You're saying you can't have any kind of political speech, is that it? Not under the auspices of that exception. That's correct. Well, does this apply to the 5 p.m. So the 5 p.m. limit is only for exemptions or for cultural events, is that what you're saying? For the downtown area? For any area. It's your statute. It's your case. It is, Your Honor. The authority cited in our briefs, including this Court's decision in G.E.K. limited travel, suggests that it is permissible for government in limited circumstances involving the uses of its own property for I'm trying to recall the language in the G.E.K. limited assessment. Don't goof that one up. I wrote it, and even I can't remember. Without looking at it, then it's not quite the same case. You've probably forgotten more about it than I ever did remember. But the point being the courts recognize that there may be some carved-out categories that government can allow limitations on speech. Well, we said that in our mem dispo. In fact, we cited G.E.K. And we still ask you, having cited that, we said the city submitted no evidence of such a content-neutral policy. So what I'm looking for is we told you what was the problem. What did you submit? And you're citing this. So your answer is the Cultural Affairs Declaration is it. That's correct, Your Honor. As to the as-applied, I realize that were it to be a factual ‑‑ excuse me, a facial challenge, there might be some additional discussion. But for purposes of the as-applied challenge, that's correct. We're talking about the old ordinance? We're talking about the old ordinance? Yes, that is, yeah. We're talking about the exemptions which continue to apply today to every ordinance, are we? Yes. Every ordinance has been passed up to this point. Please don't ask me to recite all the different iterations. But the point of the different iterations, as several of you had pointed out, was the district court was deprived of the opportunity to evaluate an actual concrete, discrete event and was forced to use as a baseline that which the plaintiffs said they intended to do, but there had been no prior incidents or track record of them having to do so. The court nevertheless recognized that the obvious purpose of using amplification equipment is to allow for sound to be broadcast above the ambient noise levels. And there were declarations from the city manager, from the city community development director and the high school principal relating to the specifics of the time and place of their respective facilities and the potential impacts that noise in excess of the ambient noise level would cause as to the disruption of activities that would normally take place in those locations. Okay.  I do, Your Honor. Because I want to make sure I understand how you understood what was unfolding on remand, at least when we issued that order, that opinion, and what changed. You said the district court was deprived of the opportunity to deal with a concrete situation. So in that paragraph or section 3, Roman 3, is what I'm looking at. Section 3, Your Honor? Yeah, Roman 3. We said the district court erred in finding on the limited record before it that Klein was not likely to prove that the 5 p.m. restriction was content-based as applied. And we laid out the general principles. And, as I say, the city submitted no evidence of such a content-neutral policy for purposes of the time, place, and manner analysis. Now, why is it you're saying that you couldn't come up in the district court with the policy statement? I thought you said you did. In the policy statement, the guiding principle is set forth in the declaration of the cultural affairs manager. Yes. And so why wasn't the district court? Oh, I'm sorry. I may have misspoke when I was suggesting that the district court had been deprived of a description of the activities in which the plaintiffs proposed to conduct themselves. At no time had the plaintiffs actually engaged in any of the activities they proposed to do, nor as a matter of historical practice has there been the use of ‑‑ I see my time is up. Must I stop? I think you can answer. No, you can answer the question. Okay. Thank you, Your Honor.  And consequently, the judge could not look at something that had occurred and assess its validity on an as-applied or facial basis, and instead had to presume based on the description of what they proposed to do in evaluating whether or not disruptive effects would occur to the point of compromising the substantial interest of the city. Thank you. Thank you, Your Honors. No other questions? Thank you very much. Counselor? Thank you, Your Honors. Following up on the court's content-based questions, I want to clarify that the content-based problem applies not only to the downtown area, but also to the city hall and to the high school. And what I'm referring to is on page 9 of my opening brief, because the law says any activity conducted on public property, which the PUP of any has authorized, are exempt from the provisions of this chapter. This chapter refers to Chapter 7 of the Municipal Code, which means the entire noise ordinance. Thus, activities favored by the city are exempt also from the 100-yard restriction near city hall and the high school. So if the court finds that the 5 p.m. restriction is content-based, then it must also find that the high school and city hall restrictions are content-based as well. I'm not sure I follow that. But in any event, could you answer counsel's argument at the end that the court wasn't able to look at the as-applied nature of the problem with the noise limit at the time limit and why the Cultural Affairs Declaration was the best that they could do? What's your response to that? The response is the city has provided no evidence whatsoever in contravention of well-established case law here. And I think the court's entirely correct that that's the case. Well, we've already said that, so I'm asking you to respond specifically. What was it about the posture of this case when it went back on remand that they're suggesting, counsel is suggesting that because Mr. Klein never went out and used his bullhorn or applied, reapplied in some fashion, that the analogy that they could come up with or the only concrete situation they could come up with with respect to the downtown ordinance, setting aside city hall and the high schools, those were specific sites. Mr. Klein wasn't trying to get into the parks, apparently, or to the Irvine Bowl or whatever. He was trying to get onto the street in the commercial area, as I recall. Isn't that correct? That is correct, in the busiest downtown area right beside the highway area. And was there no opportunity for there to be evidence put on as to how the bullhorn would affect the downtown area and that there was a rationale for distinguishing the downtown area from the parks? There's actually plenty of evidence in the record, Your Honor. Mr. Klein has said over and over again that all he wanted to do was use a volume that did not exceed ambient noise levels. And even the ambient noise levels are less than the total allowable 70 decibels in that area. So, yes, there's plenty of evidence, but it's all from Mr. Klein. Well, there was evidence from their sound expert, but it wasn't directed at the downtown area, as I recall. It was also completely fictitious, Your Honor. Well, I don't know about that. It was based on a logarithmic scale and not on the linear scale that Mr. Klein stated in his declaration. Mr. Klein over and over said that he did not want to use sound amplification above ambient sound levels. Perhaps, you know, the sound level of a man will allow voice. The district court wasn't impressed and found he wasn't impressed by Mr. Klein's declaration, so I'm not sure what the weight is for that part of your argument. Well, again, the city had the burden, not Mr. Klein. The city has the burden in everything in this case. Well, I understand. The district court weighed the two declarations and found Mr. Klein's wanting. Okay. Thank you, Your Honor. Just to summarize here. Could you two just help me? This is really about fees, isn't it? No, it's about nominal damages and also ensuring that the city does not come back and institute the two laws on city hall. But aren't you really concerned about fees right now? Well, any attorney, honestly, is going to say that fees are a factor in a case like this. I just want to know what your bottom line is as to what you want us to do, to the remedy here. Oh, the remedy is declaratory relief or, I'm sorry, a finding that these laws were all unconstitutional at the city hall, at the downtown, and at the high school. Does that answer your question, Your Honor? What about your due process violation? The due process violation only comes into play if this court should uphold the lower court decision. If this court vacates the aspect of that decision regarding the city hall and the high school, I'm assuming it would vacate the whole order, and I don't think it would matter at that point. Okay. Okay. I see my time is almost up. Thank you very much, Your Honors. Thank you. All right. These are cases 11-56031 and 11-56275, and we find those now have been submitted. And we thank counsel for your argument, and this court is now in recess. Thank you very much.
judges: Schroeder, Fisher, Smith